Receiver, Jeff Horwick, SYRB, Flatiron Partners, LP, U.S. Latino. Thank you. Good morning, your honors. May it please the court. Noam Beale on behalf of Flatiron Partners. In my limited time, I just want to focus the court on an aspect of the procedural history that I think illuminates the unfairness that occurred in the proceedings below for my client. At the time that the receiver proposed the distribution methodology to the district court, we made clear that we did not have an objection to the rising tide methodology per se, but that we disagreed with the receiver's calculation of our pre-receivership recovery. Now, the receiver told the court... May I just ask you, I'm sorry to jump in so early in your argument, but you say that you're not challenging the rising tide methodology, but it seems as if you are, as if you're saying, we accept this methodology, but we're arguing it should be applied in a way that doesn't appear to strictly conform with that or... Respectfully, your honor, I don't think that is what we're arguing. We have consistently said, and the cases hold, that rising tide is meant to put everyone on equal footing based on their pre-receivership recovery. And our position has always been that this roundtrip transfer of funds did not add to our recovery. And all that we asked was that the receiver and the district court consider the facts and circumstances of that roundtrip transfer, and we contended it could determine that we hadn't actually recovered those And we thought it was perfectly reasonable that the court could adopt a methodology and then could look at the individual facts and circumstances of each claimant to determine how that methodology should be applied. And that's simply what courts do in equity all the time. And I'm sorry, Judge Walker. No, go ahead. Finish it. Finish it. And here, the receiver said it was looking into the but the court could adopt the rising tide methodology because we were not in the first round of distribution. We didn't want to hold up the first round of distribution. And then the receiver sought discovery to look into the facts and circumstances. But at the end of the day, the receiver said the facts and circumstances don't matter because this is just a mathematical calculation. Didn't the receiver also rely to some extent on the fact that by the time the money came out the first time, it had already been spent and commingled and it was actually someone else's dollars that were coming back out so that for purposes of treating it as part of the mass, it was already commingled? That's true. And we didn't contend that it wasn't commingled. And, you know, any funds that were commingled, we agree, should be distributed to the claimants as a whole on a pro rata basis based on some methodology. We have no problem with that. But the way that rising tide is applied, the way that it accomplishes equity is if you look at each claimant's actual pre-receivership recovery and determine based on that where they fall once the tide rises to their level. And that's what the district court didn't do here. And instead, the district court said, you're asking me to apply a different methodology and since you didn't object to rising tide, you're too late. So it essentially turned what should have been an equitable process into kind of a game of gotcha that re-victimized our client. Well, is there, I mean, certainly there are many, in these situations, there are many victims and so there's not going to be perfect recovery or perfect distribution. And with regard to your suggestion of the way the rising tide should have been applied here, I don't, you know, I don't think that you cited case law in support of it. You cited a case where they suggested this might be inequitable, although even in that case, they didn't apply the method you're suggesting. So I think there is not a case where this particular situation has happened, but in every case where a district court examines a receivership and does so as a court sitting in equity, it does two things. It determines what the plan, the distribution methodology should be, and then it looks at the receiver's plan of distribution. And it's the second part that really didn't happen here. The district court adopted the methodology and then agreed with the receiver that all there's left to do is then apply this rigid calculation. That's the opposite of equity. Under the Supreme Court's equity cases, the court has said repeatedly the purpose of equity is to avoid unjust results that arise from the rigid application of mechanical rules. And the problem here is that the court sitting in equity adopted this methodology that simply applied a rigid rule and didn't look at the facts and circumstances. And in so doing, the court didn't fulfill its role in exercising its equitable jurisdiction. I see my time has expired, so I'll reserve the rest of it for rebuttal. Thank you. Good morning, and may it please the court. My name is David Martin, and I'm with the law firm of Cummings and Lockwood. I represent the claimant, Nealon Fortino. In this case, the district court erred in imputing the fraudulent acts of Ms. Fortino's investment advisor to Ms. Fortino. As set forth in Ms. Fortino's briefs, traditional agency principles do not apply when an agent acts adversely to its principle or defrauds its principle. How does it amount to imputing, and I'm sorry to I just with a short amount of time. Sure. How does that amount to imputing the agent's acts to say that receipt, is it that the receipt of the money is counting as her receipt of the money? Ms. Fortino's claim was reduced by the 1.8 million dollars that her investment advisor stole, so that's imputing the actions of the investment advisor in order to reduce the sum of her. But the action that's getting imputed is the receipt of the funds or the stealing of funds? The receipt of the funds. So we've got a defined receivership, and it's instigated by a particular set of fraudulent activities, and it identifies specific funds of money subject to the receivership, and I'm trying to figure out if we followed your argument, would we be asking the other investors who lost money in the fraudulent scheme that was a subject of the receivership, to essentially absorb some of the losses for the side hustle by somebody who was extrinsic to the receivership, in which he fraudulently siphoned money away from your client? I don't believe so, your honor. Here, Ms. Fortino's trusted investment advisor was disloyal to her, and the adverse interest exception breaks that agency relationship. Thereafter, anything that he did cannot be imputed to Ms. Fortino, so although he acted on her behalf in making the investment, he clearly didn't act on her behalf when he received sums back. I understand your argument, I'm just trying to, am I wrong that the impact of accepting your argument is that we would essentially fold his receivership and cause other investors to absorb their pro rata share of those losses? Candidly, I'm not sure how it would have an impact under the rising tide theory of recovery on the other investors. It certainly would increase my client's claim, but I'm not sure how it would impact those other investors. Well, there's a finite pool of money, right? So if your client's claim goes up, then other people's recovery goes down. In theory, that's true, and in theory, maybe it's only in theory, she has a right against Mr. Simmons. She does have a claim against Mr. Simmons, too. You're correct, your honor. Here, though, it was really a conspiracy between Varachi and Simmons. They both jointly solicited her to invest in these funds. Both made promises to her, and it's our opinion they're both jointly and severably liable for their conduct. And if she recovers against them, I assume she's not accountable back to the receiver for any proceeds that she realizes from any individual actions because those were treated as fraudulent activities outside of the receivership. Well, the sums that Simmons skimmed off the top, that was approximately $1.25 million. She did not submit those as part of her receivership claim. She reduced her claim in the first instance to reflect that Simmons had stolen that money. So she just submitted a claim for the amount that was supposed to be placed, that Simmons had to place with Sentinel, which was $4.7 million. And she reduced it by the distributions that she actually received back. Right, because there was a skim at the back end, too. He skimmed the money at the back end, too. Correct. He skimmed approximately $1.8 million off the back end, as well. So if she recovers that from him, she doesn't have to turn that over to the receiver to amongst the other investors who lost money because that loss was never included in the receivership to begin with. Say that one more time. If she recovers against him, if she was actually able to get some money out of Simmons, she doesn't have to disgorge that to the receiver for allocation amongst all the investors who lost money because that was a distinct fraudulent act. I would think that to the extent she recovered more than the receivership claim that she has submitted here, then yes, that would need to be something that's considered, is if she received too much from the receivership estate. I see my time is up. Thank you. Thank you. Good morning. May it please the court. I'm Stephen Kinseth and I represent the receiver, Jed Horwitt. The receiver appointed in this enforcement proceeding commenced by the Securities and Exchange Commission. The receiver fully recognizes and sympathizes with the appellees for having lost a significant amount of money through their investments in what turned out to be a Ponzi scheme and for Ms. Fortino for her investments with respect to her investment manager, Sedaris Capital Partners. But the uniform application of the receiver's plan of liquidation and distribution and the procedures and the methodology set forth therein is compelled once approved and authorized by the district court. Equity and notions of fundamental fairness certainly play the role in the receiver determining what to propose and for the district court to determine what to authorize and approve in the context of the plan of distribution. I understand there are two levels of arguments by Flatiron. The sort of broader argument, which I'll call the Posner argument, is an argument that when there's reinvestment as a that approach is inconsistent with the approved rising tide methodology. But I understand a narrower argument to be that within the context of the rising tide methodology applied without any of those kinds of adjustments, this was an accounting thing. This was not a distribution. It was not a withdrawal. It was an accounting thing that had no actual significance and that at a minimum the receiver had the discretion within the context of the approved rising tide methodology to zero out the two million dollars in and out in that accounting methodology. Are you saying that they didn't even have the discretion to do that? I'm saying and I think I'm saying definitely that the receiver did not have the discretion and I'm also saying that to bestow a receiver with the discretion to apply any methodology in the name of equity as the receiver determines and then submits to the district court and that the district court could have an equitable exception to a methodology would be an invitation for significant litigation. There's no case that supports that proposition. The equity determination is determined at the planned time when the methodology is selected. And with respect to 14-0 it is particularly, excuse me, with respect to Flatiron it is particularly evident because in the receiver's proposed the plan that was, sorry, the motion to approve the plan that was filed, different methodologies were explained. And one in particular was highlighted, the net investment method. And that method, and I won't go into the details, but if that method was actually embraced, Flatiron would not suffer the consequences of the rising tide method. Flatiron could have also advocated for the maximum balance approach which would have avoided this particular issue for Flatiron. And so I'm... No, I'm trying to figure out, I thought you were going to argue that this was within the receiver's broad discretion to do and, you know, there's a very deferential standard review. But I think I'm hearing you say that neither the receiver nor the district court felt they had the discretion to treat this as an accounting thing rather than a real distribution. And that makes me wonder whether if we disagree with that we have to remand because of a failure to exercise discretion. The rising tide method is a mathematical formula. It's money in, money out. The reason why this would be a dramatic shift is because in a receivership proceeding, there are many, many equitable circumstances surrounding each of the claimants. There's distinct levels of deception. There's the degree of loss, degree of harm. There's just sort of an endless possibility that a claimant can argue to the receiver saying, oh, what about this? I was particularly harmed. And just... What if it had been an accident? What if they had, we've seen cases of money getting, big money getting accidentally sent to the wrong people. What if they'd accidentally sent the money back to Flatiron and two hours later Flatiron said, no, no, no, we didn't mean for you to send this back. They sent it back. You're saying that there's no discretion to say, oh, that wasn't money in and money out. That now adds $2 million to each side of the ledger? I appreciate that point. In that case, the question is whether or not it really was a transfer. And with respect to reinvestments, what timeframe is too long? Is seven days, a month, two months? At what point should reinvestment be considered a reinvestment? At what point should it just be an accounting snafu? And what highlighted this point, and I'm not arguing exclusively that the receiver did not have the discretion, the district court did not have the discretion. Because in the alternative, even if you consider the equities of the circumstances and the discretion, there are many facts which support the district court's discretion in determining not to adjust the rising tide method. It did exercise discretion, but if you're saying it didn't have, the court didn't believe it had that discretion under the rising tide methodology, then did it exercise it? It absolutely did. In its decision, it highlighted certain equitable circumstances. And so if the court determines that the receiver and the district court did have discretion, even at the methodology level, that the methodology should be, as counsel has argued, applied flexibly, then the circumstances don't support Flatiron's view because of the many facts. They didn't receive their money back. The funds were not segregated. In fact, they were promised the funds were segregated, and then they were told that the funds were not segregated, and yet they still reinvested. They were not given verification of funds, which they repeatedly requested. And in the Ponzi scheme context, and courts have highlighted this particular issue, and we certainly are not saying that Flatiron had knowledge of the Ponzi scheme, but courts have recognized the unfortunate truth is that investors who invest and reinvest are perpetuating the Ponzi scheme. And so from a broad equitable fairness standpoint, it really doesn't support them that they were the second largest investor and that they had reinvested. And I understand the point that it was a brief period of time, but I'm arguing both things. I'm arguing I don't think it's really in the law. Equity is not broad enough to basically be an exception to a principle that was embraced based on equitable notions, and the receivers instructed to apply it. I don't think there's an equitable exception, but even if there is an equitable exception, and the district court recognized equitable issues, and that is abuse of discretion to not permit Flatiron to adjust the rising tide method. Very briefly, with respect to Ms. Fortino, I simply want to emphasize that below, the only argument that was raised was whether or not she had, quote unquote, actually received the payments that were paid to her agent through Mind the Gap. And the reason why counsel focused on that was because the claims calculation methodology specifically was defined as deposits made minus payments actually received. And that argument was consistently made in briefs and ultimately argued before the district court. The adverse interest exception was not raised at any point, and it is an exception to the agency imputation rule. It is to rebut the imputation of an agent's acts, and it wasn't presented. It's fact intensive. It's based upon whether or not the agent totally abandoned the interests of the principal, acted adversely, the agent's subjective intent comes into play, and none of that was addressed at the district court level. And so we respectfully submit that the argument was waived at nothing further. Thank you. So, your honors, I think we just heard three different versions of the receiver's argument, and they're all contradictory. First, we heard that once the plan is adopted, it's compelled. There's no discretion. And then Judge Robinson's questions point out quite rightly that that cannot be how it works. The receiver and the district court must have some discretion. So then when that comes into play, the argument that we hear is, well, there are particular facts and circumstances here, and we looked at them, and the district court looked at them. If you look at the district court's decision with respect to Flatiron's claim, which is at Special Appendix 22 to 26, the district court, its entire conclusion is that we were advocating for a different methodology, and we should have objected to the application of the rising tide method. The district court did not look at the facts and circumstances because it agreed with the argument that the receiver made at the time, and the argument that the receiver made in its Judge Robinson, we are not advocating for the big Posner argument. All we're saying is, in that Huber decision, Judge Posner indicates there may be times when rising tide is inequitable, and this is why the sort of two-part structure of the court's equity jurisdiction is so important. The court adopts a methodology, but then the court also looks at the distribution plan, and the court has discretion to have summary proceedings to determine whether the distribution plan is fair and reasonable. In specific regard to the facts and circumstances... What is the relief you're seeking here? The relief that we're seeking here, Your Honor, is a remand to the district court. We think that the, first of all, there's an error of law, which is that the district court did not perceive that there was discretion to examine the facts and circumstances, so the court should vacate its order on that basis. We think there's no factual dispute that what happened here was an accounting error, as Judge Robinson put it, and under those circumstances, it is not equitable or fair. Well, it was an accounting error. I mean, this money didn't go into a separate account for your client after it was invested, right? Our client did not know that, and from our client's perspective... Maybe I misheard that you did know it when you reinvested it. Well, at that point, we had been told that the account had not been set up yet. There were a few weeks where Mr. Veracci, who was defrauding our client, said, we're still in the process of setting up the account, that's why you can't calculate your NAV from here, and that's when the decision was made to do this round-trip transfer, just to calculate NAV for January 2015, and then the money goes right back, and Mr. Crawford, the principal of Flatiron, is led to believe at that point that it is in a segregated account. That's all part of the fraud. So the amount that the receiver came up with, the percentage, was 4306, right? Correct.  It would be 20.74. And so we think that this court, given that there are no disputed facts, this court could remand with instructions to apply that percentage, and we would urge the court to do that. But at a minimum, we think this court must vacate the district court's decision and say that the court has to look... Well, that would involve all sorts of matters that we don't know about how the scheme is implemented, what information your client had upon the reinvestment, and things of that sort. Well, but Your Honor, the receiver took discovery, asked to take discovery on this issue, was granted discovery, and after that discovery process, it was undisputed that Mr. Crawford's assertion that what happened here was just this brief round-trip for this calculation was correct. There was no dispute as to that. So I think that the receiver has had ample opportunity to explore the facts and circumstances here. And then the problem is, once those facts and circumstances came out a certain way, the receiver said, well, the facts and circumstances don't matter. But, well, no. You don't dispute that your client voluntarily... This wasn't, oops, we accidentally sent that to you, can you please wire it back? That your client took the money, had it for some period of time, and then decided of its own free will, not because it was contractually bound to do so or bound by any principles of law or equity, to send it back. Isn't that a pretty different scenario from the hypothetical that I gave to your colleague? Well, I think it was not a knowing and voluntary choice, Your Honor, because our client was still, this was still in the midst of the fraud. None of these people made a knowing and voluntary choice. Nobody said, I want to invest in a Ponzi scheme. No, that's correct. And the reason that the rising tide method is, can be fair, is if people take distributions or actually withdraw money and recover money in the midst of the Ponzi scheme, that money should then be accounted for when you determine the receivership recovery. We have no dispute. If it's done and it's, if it's made office and does this for whatever, 30 years doing this, and you take the money out in year five, and then in year 10, you put it back in, that doesn't count. I think that's, I mean, I think what we're talking about here is sort of a spectrum of possible scenarios. Well, I think the point of equity is that you don't have to draw a clear and rigid line. The whole purpose of equity jurisprudence, or jurisdiction rather, is to allow the court to look at the particular facts and circumstances and do what is fair and reasonable in light of those facts and circumstances. And the notion that doing so is an exception to equity just is not consistent with what the Supreme Court has said. I mean, I just want to point the court to the language in Holland versus Florida, case we cited in our brief, where the court said the purpose of equity is to enable the court to meet new situations that demand equitable intervention and accord all the relief necessary to correct particular injustices. It's for specific circumstances, often hard to predict in advance, that could warrant special treatment in the appropriate case. And all that we ask for in this case is for the court to exercise that jurisdiction, look at the particular facts and circumstances, and give our client a fair shot at real recovery. So we'd ask the court to do that. Thank you. Thank you. Thank you. Just two brief points in response to the receiver's arguments. First, we did not raise a new argument on appeal. The adverse interest exception is entirely consistent with the claims calculation methodology that was employed by the district court here. It leads to a calculation of a claim based on the principal amount invested less the distributions that were actually received. This is... Right, but to the extent, though, that your argument is about adverse interest and... I think perhaps you're saying that essentially that the idea was put forward, but it wasn't actually argued below. Is that correct? We did argue that Ms. Fortino's claim and that Ms. Fortino should not be penalized by her agent's adverse actions. That was made clear below. No, we did not cite this legal theory, but the argument was made below. Second, even if it were not made below, I see my time is up now. You can finish. Thank you. It should be considered now because one manifest justice would incur. My client is a single mom who was defrauded of nearly $6 million in the Ponzi scheme. She should not be penalized by the bad acts who stole her investment and indeed went to prison for their acts. Second, agency law presents a legal question. The district court applied the incorrect law by ruling that payment to the agent constitutes payment to the principal. It ignored the exception to this rule as it does not apply when the agent acts adversely to the principal. Therefore, even if the court does treat this as a new argument, it should nonetheless consider it. Thank you. Thank you. Thank you to all parties. We'll take it under advisement.